Marcos **AREVALO**, Plaintiff,

v.

State of **OREGON DEPARTMENT OF MOTOR VEHICLES**, Billie Brown, and Jim Hunter, Defendants.

No. CV 00–263–BR.

United States District Court, D. Oregon.

March 26, 2002.

Kevin Lafky, Lafky & Lafky, Salem, OR, for Plaintiff.

Hardy Myers, Attorney General, Patricia Bridge Urquhart, Assistant Attorney General, Department of Justice, Salem, OR, for Defendants.

## OPINION AND ORDER

BROWN, District Judge.

Plaintiff Marcos Arevalo brought this action against State of Oregon Department of Motor Vehicles (DMV) as well as Billie Brown and Jim Hunter, two DMV administrators, alleging sex and national origin discrimination under Title VII, 42 U.S.C. § 2000e, and 42 U.S.C. §§ 1981 and 1983. By the close of evidence in a four-day jury trial, Plaintiff withdrew his § 1981 claims, and this Court dismissed Plaintiff's § 1983 claims against the individual Defendants. The Court submitted Plaintiff's remaining Title VII claim against DMV to the jury, which returned a verdict in favor of Plaintiff and awarded him $300,000 [1] in damages for emotional distress.

This matter comes before the Court on Defendants' Alternative Motions for Judgment Notwithstanding Verdict,[2] New Trial or Remittitur (# 90, # 92).[3] For the reasons that follow, the Court **DENIES** Defendants' Motions.

---

1. As Plaintiff requested, the Court entered Judgment for only $250,000, the amount of the prayer in his Complaint.

2. The Court will treat Defendants' Motion for Judgment Notwithstanding Verdict as a Mo-

## MOTION FOR JUDGMENT AS A MATTER OF LAW

### Standards

Judgment as a matter of law is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, permits only one decision, and that decision is contrary to the one reached by the jury. *Forrett v. Richardson*, 112 F.3d 416, 419 (9th Cir.1997). The Court, therefore, sets forth the evidence in the light most favorable to Plaintiff. *See Ace v. Aetna Life Ins. Co.*, 139 F.3d 1241, 1246 (9th Cir.), *cert. denied*, 525 U.S. 930, 119 S.Ct. 338, 142 L.Ed.2d 279 (1998).

### Facts

In March 1999, Plaintiff, an Hispanic male, was a 17–year veteran with DMV, the lead worker in the North Salem DMV office, and the only male in that office. He was accused of using his position for personal gain and "selling" or otherwise improperly issuing drivers' licenses to unqualified Spanish-speaking license applicants. In an earlier investigation, the Oregon State Police found no evidence to support these accusations. Police investigators contacted DMV, however, because the complaint against Plaintiff originated with a DMV employee in the North Salem office. Investigators thought it odd that a DMV employee complained to the police rather than directly to DMV administrators.

Although police investigators found no evidence to support the accusations against Plaintiff, DMV began an internal inquiry, ordered Plaintiff not to talk to anyone, placed him on administrative leave, and

---

tion for Judgment as a Matter of Law pursuant to Fed.R.Civ.P. 50(a).

3. The Court will resolve Plaintiff's Petition for Attorney Fees and Costs (# 88) by separate Opinion and Order.

gave him a pre-dismissal letter. DMV withdrew its threat of dismissal when its internal investigators also failed to find evidence to support the criminal allegations. The DMV, nevertheless, proceeded to take disciplinary actions against Plaintiff, accused him of lesser misconduct, and gave him a pre-demotion letter.[4] Plaintiff disputed the factual bases in the pre-demotion notice, but DMV demoted him anyway and transferred him to the Albany office in May 1999. Plaintiff filed a union grievance concerning his demotion and transfer. At the Albany office, Plaintiff was treated differently from other workers with regard to expense reimbursements, sick leave, the process by which he was to serve Hispanic customers, and his general job assignments. While his grievance was pending, unchecked and unsubstantiated rumors continued to flourish among DMV's employees that Plaintiff had engaged in criminal conduct.

DMV then discovered Plaintiff had engaged in a sexual relationship with a female subordinate at the North Salem office in 1998 and had lied about the relationship when confronted by his supervisor, Maggie Robles. DMV learned that all of the female employees under Plaintiff's supervision at the North Salem office had known of his affair with their co-worker. These employees experienced conflict in the work place when Plaintiff and his paramour had disagreements, and the other employees resented the fact that Ms. Robles believed Plaintiff's denials of the affair and did not discipline him. These employees did not speak Spanish and, therefore, did not understand the conversations Plaintiff engaged in with Spanish-speaking customers. Perhaps because of their animus toward Plaintiff, these employees began to suspect Plaintiff was giving preferential treatment to Hispanic customers.

Although there was evidence to support the employees' suspicion, the jury could have concluded these suspicions were unfounded. The jury also could have found neither DMV nor Plaintiff's subordinates at the North Salem office were concerned that Ms. Robles, who also is Hispanic, might be giving Hispanic customers preferential treatment even when her Spanish-speaking service to Hispanic clients sometimes did not comply with DMV policies. In addition, the jury could have found DMV and Plaintiff's subordinates were not concerned when "Anna," a Caucasian female employee who spoke Russian also extended impermissible courtesies to Russian-speaking customers.

Plaintiff ultimately admitted the improper affair with a co-worker and his dishonesty about it. He agreed to settle his union grievance by accepting the demotion and transfer as punishment for the inappropriate sexual relationship and his related dishonesty. Consequently, no claims for lost wages or other economic damages arising from the demotion and transfer were submitted to the jury.

### Discussion

■ In support of their Motion for Judgment as a Matter of Law, Defendants contend the evidence at trial conclusively showed DMV had legitimate, nondiscriminatory reasons for disciplining Plaintiff, and Plaintiff failed to establish those reasons were pretextual. Defendants, howev-

---

4. DMV's "Demotion" notice charged Plaintiff with (a) using his position to get a co-worker to issue an Oregon Identification Card to Plaintiff's son without required identification; (b) processing the driver's license of a friend and asking a co-worker who did not participate in the testing process to verify it; (c) making false, misleading, or inaccurate statements during the investigation; (d) intimidating co-workers; and (e) insubordination.

er, miss the focus of Plaintiff's Title VII claims.

DMV persistently focused at trial on justifying its actions in disciplining Plaintiff for sexual misconduct and dishonesty. In his Title VII claim, however, Plaintiff did not dispute it was appropriate for Defendants to investigate the accusations of criminal conduct against him or ultimately to discipline him for engaging in a sexual relationship with a subordinate and lying about it. As noted, Plaintiff did not submit a claim to the jury for lost wages or economic damages resulting from his demotion and transfer.

Plaintiff's Title VII claim was based instead on his assertion that he was subjected to a discriminatory disciplinary process in response to complaints about his perceived preferential treatment of Hispanic customers. Plaintiff contended the disciplinary process Defendants subjected him to was harsher and more aggressive than the process applied to other workers outside of his protected class who also engaged in practices that appeared to give preferential treatment to customers who did not speak English. For example, both Ms. Robles and Anna received counseling. They were not ordered to be silent, publicly placed on administrative leave, or issued pre-dismissal letters for arguably similar irregularities when serving customers who did not speak English. Plaintiff contended DMV violated Title VII when it subjected Plaintiff to harsher treatment because the only difference between Plaintiff and these other individuals was Plaintiff's status as an Hispanic male.

Viewing the evidence favorably to Plaintiff, the jury could have found Plaintiff did not give Hispanic customers preferential treatment. Indeed, the jury could have found Plaintiff, Ms. Robles, and Anna

were service-oriented and used their language skills to help customers who did not speak English. The jury could have found Plaintiff, nevertheless, was singled out and subjected to a disciplinary process that extended over months and that included unwelcome newspaper coverage of unfounded criminal charges, threats to terminate and to demote him, and a variety of uncomfortable working conditions after his transfer.

DMV accused Plaintiff of illegal and then inappropriate and preferential treatment of Hispanic customers. The jury could have found only Plaintiff was ordered not to talk to anyone during the internal investigation, only Plaintiff was placed on administrative leave, only Plaintiff was threatened with a pre-dismissal letter, only Plaintiff was demoted and transferred, and only Plaintiff experienced adverse treatment in his new assignment. In contrast, it was undisputed that Ms. Robles and Anna merely received counseling and other training assistance to correct perceived irregularities in the way they dealt with customers who did not speak English. The jury, in fact, could have found the only difference between Plaintiff and Ms. Robles or Anna was Plaintiff's status as an Hispanic male.

The Court instructed the jury without objection [5] as follows concerning the elements of Plaintiff's Title VII claim:

> Under the federal law known as Title VII, it is unlawful for an employer to take adverse employment actions against an employee because of that person's national origin and/or gender. It is not unlawful, however, for an employer to discipline an employee based on legitimate, nondiscriminatory reasons.

**5.** Although DMV contended the evidence was insufficient to submit the Title VII claim to the jury, DMV joined Plaintiff in agreeing to these instructions.

Plaintiff Marcos Arevalo brings this action for employment discrimination against Defendant State of Oregon Department of Motor Vehicles alleging that Defendant took adverse employment actions against him and that a motivating factor in Defendant taking such actions was Plaintiff's status as an Hispanic, a male or an Hispanic male. Specifically, Plaintiff alleges Defendant took one or more of the following adverse employment actions against him:

1. Plaintiff was ordered not to speak to anyone pending Defendant's investigation when others similarly situated outside Plaintiff's protected class were treated more favorably;

2. Plaintiff was placed on administrative leave when others similarly situated outside his protected class were treated more favorably;

3. Plaintiff was issued a pre-dismissal letter when others similarly situated outside his protected class were treated more favorably;

4. Plaintiff was given a pre-demotion letter (involving also his transfer to Albany) when others similarly situated outside his protected class were treated more favorably; and

5. Plaintiff has been treated adversely in the work place in Albany concerning his expenses, and the process by which he is required to service custom taking of sick leave, his job assignments, his reimbursement for travelers when others similarly situated outside his protected class were treated more favorably.

Plaintiff seeks compensatory damages for emotional distress he claims as a result of these allegedly unlawful employment actions. There is no claim before you for lost wages.

Defendant denies Plaintiff's claim and specifically denies its decisions to discipline Plaintiff were in any way unlawful.

Defendant, moreover, contends there were legitimate nondiscriminatory reasons for each of the disciplinary decisions Defendant took against Plaintiff. Thus, to establish his Title VII claim for employment discrimination, Plaintiff must prove by a preponderance of the evidence all of the following elements:

1. Defendant took an adverse employment action against Plaintiff in one or more of the five ways just specified;

2. A motivating factor in taking such adverse action against Plaintiff was Plaintiff's status as an Hispanic and/or male; and

3. Plaintiff sustained emotional distress as a result of Defendant's unlawful conduct.

Applying these instructions and viewing the evidence in the light most favorable to Plaintiff, the jury could have found in Plaintiff's favor on his Title VII claim. The Court finds, therefore, Defendants have failed to establish that they are entitled to judgment as a matter of law. Accordingly, Defendants' Motion for Judgment as a Matter of Law is DENIED.

### *MOTION FOR NEW TRIAL*

Defendants move the Court for a new trial. As Defendants note, the Court may grant a new trial on the ground of insufficiency of the evidence if the verdict was against the great weight of evidence or if it is clear the jury reached a seriously erroneous result. *See Johnson v. Paradise Valley Unified School Dist.*, 251 F.3d 1222, 1229 (9th Cir.2001). For the reasons explained in the preceding analysis of Defendants' Motion for Judgment as a Matter of Law, this Court concludes the jury's verdict was not "against the great weight of evidence." *Id.* In addition, although this Court may have reached a different result

if it had been charged with weighing and evaluating the conflicting evidence in the case, the Court finds reasonable minds could differ. Accordingly, the Court concludes the jury did not reach "a seriously erroneous result" in the exercise of its power to weigh and to evaluate the evidence. The Court, therefore, DENIES Defendants' Motion for New Trial.

### *MOTION FOR REMITTITUR*

■ Defendants ask the Court to exercise its discretion and to grant Defendants "a significant reduction in the amount of the judgment." Defendants, however, make no suggestion as to the extent of the reduction they seek. Indeed, Defendants did not raise the question of damages in their closing argument to the jury. Without objection from the parties, the Court instructed the jury concerning damages as follows:

> Plaintiff seeks compensatory damages for emotional distress he claims as a result of these allegedly unlawful employment actions. There is no claim before you for lost wages.
>
> \* \* \* \* \* \*
>
> If you find from the evidence that Defendant based its decisions to discipline Plaintiff on one or more legitimate, non-discriminatory reasons, your verdict ... must be for Defendant. However, if you find Plaintiff has proved his claim as I am instructing you ..., you must decide the amount of money which will reasonably and fairly compensate Plaintiff for the emotional distress he proved he sustained as a result of Defendant's unlawful conduct. The mere fact that I am instructing you with regard to the measure of damages is not to be considered by you as an attempt by the court to suggest or indicate that you should or should not award damages.
>
> The law does not furnish you with any fixed standard by which to measure the exact amount of damages. The law does require that all compensation you allow be reasonable. You must apply your own considered judgment, then, in determining the amount of money which will reasonably compensate Plaintiff for any emotional distress he sustained as a result of the Defendant's unlawful conduct. In doing this, you may consider the nature and extent of Plaintiff's mental and emotional pain and suffering which he has experienced as a result of Defendant's unlawful conduct. Because Plaintiff ultimately agreed to a voluntary demotion, he may not recover damages in this action for his reduction in pay and position. You may, however, compensate Plaintiff for any emotional distress he sustained as a result of his demotion, so long as you also find that distress resulted from Defendant's unlawful conduct.

The jury awarded Plaintiff $300,000. As noted, Plaintiff voluntarily reduced that award to $250,000, the amount stated in the prayer of his Complaint and in the Pretrial Order. Viewing the evidence in the light most favorable to Plaintiff, the jury was entitled to find that Defendant subjected Plaintiff to a disciplinary process that was more aggressive and harsher because of his status as an Hispanic male and because of irregularities in his performance for which white and Hispanic females received only modest criticism. In addition, the jury could have found Plaintiff experienced significant distress and humiliation for more than a year as a result of DMV's discriminatory conduct. Damages for emotional distress arising from an employer's unlawful discrimination necessarily are subjective and difficult to quantify. The Court assumes this jury of eight citizens, who deliberated for many hours, followed the Court's instructions and awarded the compensation each juror found to be "reasonable." The Court

notes the jury's award is not so generous as to persuade the Court that it is excessive. The Court, therefore, DENIES Defendants' Motion for Remittitur.

### CONCLUSION

For the reasons set forth above, Defendants' Alternative Motions for Judgment Notwithstanding Verdict, New Trial or Remittitur (# 90, # 92) are **DENIED**.

IT IS SO ORDERED.